299 So.2d 61 (1974)
Warren D. RUHNAU, Appellant,
v.
Barbara R. RUHNAU, Appellee.
No. U-36.
District Court of Appeal of Florida, First District.
August 27, 1974.
*62 Sidney E. Lewis, Goldman, Presser, Lewis & Nussbaum, Jacksonville, for appellant.
Harry B. Mahon, Mahon, Farley & Vickers, Jacksonville, for appellee.
BOYER, Judge.
This appeal emanates from a final judgment of dissolution of marriage.
The parties were married in 1954 at which time the husband was in college. The wife worked until shortly before the husband completed dental school in 1959. Subsequent to that time the wife has not been employed other than as a mother and housewife and a part-time secretary to her *63 husband. The parties have four living minor children who are with the wife and who range in ages from 4 to 16. The year prior to the final hearing the husband reported an adjusted gross income in excess of $39,000. The wife filed a financial affidavit showing a need of $1,500 per month.
Following the final hearing the trial judge entered a final judgment of dissolution dissolving the marriage, awarding the wife the permanent care, custody and control of the minor children subject to visitation privileges to the husband, awarding the wife the exclusive use of the home of the parties together with the furniture and furnishings "so long as she exercises custody of one or more of the aforesaid minor children of the parties and remains unmarried", awarding the wife the sole and exclusive use and possession of a certain automobile, requiring the husband to pay the wife's attorney a nominal attorney's fee, requiring child support payments to be made by the husband in the sum of $600 per month, said payments to "continue until said children, respectively, attain the age of 18 years, marry or become self-supporting, whichever event may occur first", requiring the husband to pay certain debts accumulated by the parties, requiring the husband to pay to the wife permanent alimony in the sum of $600 per month "until the wife shall remarry or die, whichever event may occur first" and further providing as follows:
"In the event said children, or any of them, shall remain unmarried and shall enroll in a recognized and accredited college or university after attaining the age of 18 years and prior to attaining the age of 21 years, the Husband shall pay to each of said children so enrolled in such college or university the sum of $200.00 per month as a contribution toward the cost of college education. Each such payment to each of said children so enrolled in such a college or university shall be made on the first day of each month following the attainment of 18 years of age of each such child and the enrollment of said child in such college or university, and such payments shall continue so long as the child involved remains enrolled in such college or university, or marries, or attains the age of 21 years, whichever event shall first occur."
It is from the last two mentioned provisions of the final judgment that this appeal is taken.
Considering the points raised in reverse order, we first consider the above quoted provision of the final judgment requiring the husband to "pay to each of said children so enrolled in such college or university the sum of $200.00 per month as a contribution toward the cost of college education." We have heretofore held such a provision to be contrary to the law of the State of Florida. White v. White, Fla. App. 1st 1974, 296 So.2d 619. Our reasoning is fully set forth in that opinion and no useful purpose will be served by repeating here what was said there. As to the above quoted provision from the final judgment of dissolution we reverse.
We now turn to appellant's other point, relating to the award of permanent alimony. Appellant contends that the trial court abused its discretion in awarding the wife $600 per month permanent alimony. The gist of appellant's complaint does not appear to be directed to the amount but rather to the permanency.
It is commencing to appear to us that the bench and bar has the impression that we, by judicial feat, have abolished permanent alimony. Such is not the case. The cases most often cited to us in support of such a proposition are Beard v. Beard, Fla.App.1st 1972, 262 So.2d 269, Thigpen v. Thigpen, Fla.App. 1st 1973, 277 So.2d 583, Roberts v. Roberts, Fla.App. 1st 1973, 283 So.2d 396 and, of more recent vintage, Fitzwater v. Fitzwater, Fla.App. 1st 1974, 296 So.2d 74.
*64 It was not our intention that any of the above cited opinions (nor any of our other opinions on the subject) be construed as disapproving permanent alimony under appropriate circumstances. Indeed, Florida Statute 61.08 specifically allows alimony, both rehabilitative and permanent. We do not have authority, by judicial decree, to amend or abrogate that statute, nor have we ever intended so to do.
In Beard v. Beard, supra, the wife was made to appear to be a confirmed alcoholic who was capable of self support. This court simply held that it was error to grant her lifetime alimony so that she might continue her path of self destruction via a whiskey bottle. A very material fact in that case, as recited in the opinion, was the finding that shortly after the separation of the parties the wife secured employment in the post office at the University of West Florida where she occupied a supervisory position which entailed the responsibility of operating the office with seven employees under her supervision which position she retained until she voluntarily resigned less than sixty days prior to the institution of the action giving rise to that appeal. We did, indeed, in that opinion quote a laudable statement written by Justice Roberts in Kahn v. Kahn, Sup.Ct.Fla. 1955, 78 So.2d 367, and we further recited the evolution and revolution of the sexes insofar as standing in society is concerned.
In Thigpen v. Thigpen, supra, we recited as a material portion of the opinion, the ability of the wife to support herself and further that "the only child of the parties is a married adult not dependent on her parents for support." We further quoted with approval from Lefler v. Lefler, Fla. App. 4th 1972, 264 So.2d 112, wherein the writer of that opinion stated:
"* * * We have the view, however, that no matter which direction the flow of alimony may take, its basic nature and purpose remains the same as heretofore, i.e., to provide nourishment, sustenance and the necessities of life to a former spouse who has neither the resources nor ability to be self-sustaining. We expressly hold that just as heretofore the wife's entitlement to alimony depended upon a showing of her need and the husband's ability to pay, * * *" (264 So.2d at page 113)
In Roberts v. Roberts, supra, it is recited that the two children of the parties have both "grown and gone", and further that "the records show that appellant's ability to make such payments are no greater than appellee's ability to provide for herself. Appellant's earnings from his business and Navy retirement pay combined are no greater than appellee's own earnings from her well established employment of thirteen years standing." To the same effect is our holding in Fitzwater v. Fitzwater, supra.
In the case sub judice the record reveals that the wife has no independent income nor means of livelihood. She is the mother of four children ranging from four to sixteen and has devoted the major portion of her married life to rearing those children. At least the four year old will continue to require her care and guidance for a long period of time. By that time it may well be that the wife will have reached such a stage in her life as to render her incapable of preparing herself for independent support.
We are of the view that there is no substitute for the guiding hand of a mother in the rearing of children. When we so use the term "mother" we use it in the traditional American sense. A female who gives birth to a child and thereafter relinguishes its rearing to a maid, baby sitter or nursery while she spends her time at bridge parties, luncheons, or heavens knows what, does not necessarily fit that definition. We do not now intend, and never have intended, to discourage the role of a mother by the few remaining women in our society who are willing to fulfill that obligation and purpose. In those rare instances wherein the evidence reveals that a wife has been accustomed to fulfilling *65 the role of a mother and is willing to so continue, and when the child or children are of such tender years as to render parental guidance a continuing function for a reasonable period of time in the future, and where the trial court finds from the evidence that the wife is willing and able to continue to fulfill that role, then he is fully justified in awarding permanent alimony.
We hasten to here emphasize that what we have here said about a mother and wife is equally applicable, under the appropriate circumstances, to a husband and father. We do not intend to be distinguishing between the sexes. We fully recognize that there are instances wherein the strong guiding hand of a father is just as important, or perhaps more important, than that of a mother.
We also point out that the word "permanent" is not necessarily synonymous with "forever". Change of circumstances, including ability of self support after children are "grown and gone" clearly justifies, depending upon the circumstances of each case, modification of alimony judgments (Florida Statute 61.14).
Needless to say, awards of alimony may not be bottomed on a vacuum. Whether alimony be rehabilitative or permanent, the evidence must be such as to support the award. A fortiori, in the absence of a stipulation, appropriate evidence must be adduced and received. In this regard we quote with approval from Oliver v. Oliver, FlaApp. 4th 1973, 285 So.2d 638, wherein our sister court of the fourth district said:
"* * * It is our view that Section 61.08(2):
`(2) In determining a proper award of alimony, the court may consider any factor necessary to do equity and justice between the parties,'
"is dispositive of the issue and correctly so. While it would be desirable to make the whole marriage dissolution procedure pleasurable and non-abrasive, such result is not possible when one considers the overriding considerations that apply in determining the amount of alimony, if any, to be awarded.
"As all know, there is a wide range of discretion vested in the court in deciding how much and the kind of alimony to award and there are many factors, such as the misconduct of a party, that may properly be placed before the court touching upon the issue and which form the basis for the proper exercise of such discretion. See 10A Fla.Jur., Dissolution of Marriage, Separation, and Annulment, § 52 et seq. Alimony is not determined by some iron clad formula that can be applied with sharp certainty. The equities, circumstances and the whole marital picture furnish and form the fabric from which the award is to be cut, and if the court limits itself solely to the economics of the matter, it deprives itself of valuable factors that may aid in doing justice to the problem.
"The predecessor statute, Section 61.08, F.S. 1969, F.S.A., is not materially different from the current statute, 61.08(2), supra, as both provide for alimony based upon a consideration of equity and justice.
"We feel that because of the mentioned similarity between the two statutes, the case law that construed the earlier alimony statute concerning the misconduct of the parties is equally applicable to the 1971 statute. Thus, the marital conduct and misconduct of the parties is a factor to be considered in determining alimony. Hobbs v. Hobbs, Fla.App. 1962, 136 So.2d 363. See also 9 A.L.R.2d 1026 and 34 A.L.R.2d 313; Fla.Family Law § 22.39 (2d ed. 1972).
"To illustrate our holding, there is normally a range within the court's discretion as concerns the top and bottom amount of alimony that may be awarded, based upon given financial circumstances. *66 With this as a start, a judge may properly consider whether the wife has been dutiful as a true helpmate in the marriage relation, contributing her talents and energies to the marital purposes. He may consider as less worthy and entitled a wife who had contributed nothing, but has been destructive of the husband's efforts and unmindful of her own obligations.
"We do not agree, as the appellant suggests, that it is necessary for the court to determine a prevailing party or that the equities be one way or the other. And we do not wish to be understood as saying that a trial judge is obliged to sit and hear every jit and jot of testimony offered by a party as to the other's misconduct. He is surely vested here, too, with a discretion and it is enough that he simply get a broad picture and understanding of the relative equities and factors necessary to do justice." (285 So.2d at 240)
We conclude therefore that the lower court did not err in the award of permanent alimony under the circumstances of this particular case.
The appellee has filed a motion for attorney's fees incident to this appeal. The award of attorney's fees in matters wherein attorneys fees are allowable under Chapter 61 of the Florida Statutes is analogous to the award of alimony: That is, among other things, the court must consider the faculties of the party seeking the award and the ability of the other party to pay. There are many instances where the court will be fully justified in determining that although a reasonable fee for the requesting party's attorney may be substantial, the responding party has the ability to pay only a portion thereof. However, in the case sub judice, it appears that the appellee is without funds, that her attorneys are entitled to compensation and that the appellant has the ability to pay. Accordingly, the trial court is directed to determine, in the manner provided by law, appropriate compensation for appellee's attorney, taking into consideration, in addition to the other factors required by prior decisions of this court and the Supreme Court, the fact that the appellee has on this appeal prevailed in part and lost in part, and require the payment thereof by appellant in such manner as may appear to be appropriate in the premises, based upon the evidence.
Affirmed in part and reversed in part and remanded for further proceedings consistent herewith.
Spector, Acting C.J., and McCORD, J., concur.